I'm sorry I'm sorry mr. Cruz yeah do you have an update for us today on I've spoken to Ms. Kwon's grandson who confirmed that she did pass away about two weeks ago he said there were some documents executed before her death his understanding is his mother and Mrs. Kwon's daughter Helen Kwon is handling the estate's affairs I don't have any other details than that I wasn't informed until yesterday that she had passed away but when we did learn that we took immediate action to figure out what to do about it in terms of correcting the record we need to do with this court and finding out what happened apparently the lawyer wasn't the first person they called when when she passed and I hadn't otherwise been in touch with her since shortly after trial or I should say rather around the time the appeal was filed so where does that leave us well my understanding from mr. Lee is that the estate intends to pursue the appeal so the estate will be substituted for your plan that is the my let's proceed I may have pleased the court my name is Mike Cruz as you know I'm here for Dacon Kwon the plaintiff in the underlying case in the appellant here this case was decided ultimately placing 30% fault with the defendant Costco 70% fault with plaintiff miss Kwon under Hawaii law then there's no 60% at fault and the appeal was filed because that conclusion was reached based upon two clear errors of law an additional error in failing to enforce a pretrial sanctions order requiring an adverse inference of a certain set of facts that would have appeared on a surveillance video had it not been destroyed and as the court found spoiled which culminated in an ultimate contaminated analysis of the comparison of fault between miss Kwon and Costco which was then augmented by the fact that there were no specific findings that miss Kwon didn't exercise due care in any way now turning first to those errors of law the first was a misapplication of the duty to warn the duty to warn arises upon notice or notices also comes in the form of creation of an unreasonable risk of harm the court's analysis was that the duty of harm arises when the defendant or the defendant's agent employee in this case has noticed that the plaintiff the person who's about to be injured doesn't see the risk of harm did the district court determine that an it made a few specific findings in that regard and it's confirmed with its ultimate finding where is that well at page 6 of the findings of fact which is page appears on page 41 of the excerpts of record there's the conclusion that Costco and its employees know that flatbed carts used by Costco prevent present potential tripping hazards then later on at page 19 it lists six specific ways and it should be seven if it included the failure to warn in which the defendant you through its affirmative acts or omissions made that risk of harm or dangerous that's by the district court said because of this this and this I find that there was an unreasonable hazard that existed did it did the district court do that the district court didn't state that exact sentence but by acknowledging and unreasonable risk of harm of tripping and it says by itself sitting off I place on its own is not a hazard but it found affirmatively and these are the findings on page 19 that it took that risk of harm and increased it which is by definition an unreasonable risk of harm outside under lights or against the wall it may not present a risk of harm but in the context in the facts of this case where it takes the flatbed carts and stacks five from together which the increases the risk of harm it brings the cart into a crowded aisle way during the busiest time of the day and it doesn't paint them to keep them visible all affirmatively increase that risk of harm and by definition is a reasonable unreasonable risk of harm and I know that the defendant and the appellee here makes a large a lot of argument about there is no unreasonable risk of harm we have an ultimate conclusion that Costco is 30% at fault that requires that the court found that there was an unreasonable risk of harm that there was negligence in affirmatively creating that risk of harm or in failing to remove it and that that was a substantial cause of the injury it just problem with the analysis on the overall standard of unreasonable risk of harm one it's diluted because they're not looking at the failure to warn but the court goes through this analysis and says we have a risk of harm it really means that if you look at page 18 district court's finding at number 10 um you go through 10 11 12 13 all of those findings there's a mixture of things that the court found um including that uh they did not um I guess it's on even if there's no evidence that a single flatbed cart constitutes an unreasonable hazard there is no credible evidence and the court does not find that a stationary row five flatbed carts is without more than reasonable hazard that's at number 12 I guess there's just a combination of things so there was never a definitive statement that the district court found unreasonable risk of harm so I'm just trying to find out about what the duty to war that would be if there was no clear finding by the district you're correct that the court does make some conflicting findings and our argument is based on looking at those specific findings and how under a proper understanding of unreasonable risk of harm and then thus duty to warn there is in fact a finding of unreasonable risk of harm and I think those paragraphs bear that out where we have the court recognizing flatbed carts present a tripping hazard but on their own quote to quote the court don't present an unreasonable risk of harm well if they're not moving they don't if they're moving they might be now in this case they sold it seems to me that controlling question is where the carts moving at the time the deceased now the plaintiff encountered the carts with her leg or foot and fell if the carts and of course if the evidence hadn't been spoiled by being erased after six days or whatever they do with their their film if the evidence hadn't been spoiled we might know whether the carts were moving and if the carts were moving then the judge may have been wrong when he said she was 70% negligent for failing to keep a lookout but the Costco was 30% negligent for having a hazardous condition so if there was a new trial how would you what would you do about the the presumption I how would you would argue that because there's no proof as to whether the carts were moving there no believable proof as to whether the carts were moving or not and we don't have a film because it was spoiled how do you put together a new case on retrial well that was the same as our argument at trial and it would be the same at retrial there was evidence that the carts were moving first of all I agree and the answer kind of two parts but first looking at the the spoliation issue that was why we filed the motion was on that point if we had had this and the court affirmatively found this was spoliation yeah and we are imposing wasn't as a you know he unconveniently forgot about that finding after he got to making his final decision exactly and that is why we filed the motion said if we had this video we'd be able to see what happened we don't have the video they spoiled it so those facts the scope of which are not in controversy it would have included where the incident occurred what law requires the court to apply an adverse inference in any particular way because he did use it to say that okay I'll say that the Costco was very crowded and I'm just trying to figure out what is there any law that dictates how a district court should apply an adverse inference well our argument certainly is not there's no discretion in how that would be applied and I'm boundary between you're applying it or not is more is subject to more close scrutiny in here in this case I believe you look at every material fact at least with respect to whether it was moving or not and those were inferred the opposite in favor of Costco so I think it's safe to say that if you are going to infer the facts subject to an adverse inference favorably to the party who's been found to be the despoiler of evidence that's not an adverse inference and that's what we have particularly with Mr. Ogasawara who was the co-employee of the woman who was moving the cards or at least holding the cards where he looked up and his initial testimony at trial was no I looked up didn't look like they're moving I looked down and then mrs. Kwan was injured his testimony at first seemed to have some inconsistencies so on cross-examination actually was redirect examination by myself I explored some of the specifics of his testimony and he spontaneously said oh no the carts were moving okay well their witness has now said the card is moving so that was the end the court however inquired further and asked a series of direct questions to mr. Ogasawara say you know you've now confused me you seem to have testified that it wasn't moving now you said it is moving and mr. Ogasawara confirmed multiple times to the court that the cart was certainly moving when he looked up before you looked back down which was a couple seconds before the fall that's a credibility determination made by the district court how do we not to give that a lot of deference a credibility determination by the court in the where we have a specific set of facts that would have been appeared on the video and the court said those were spoiled and all the inferences we are going or we're going to draw adverse inferences to Costco on that set of facts which includes whether the car was moving and when Costco's witness says yes the cart was moving and the court says well we're going to just throw that that is in contravention of the adverse inference order that was imposed before trial because it is inferring those facts in Costco's favor what was the adverse inference order before trial what did that require and show and hold the the issue was Costco policy and the associated law of having to retain surveillance videos we filed a motion because the evidence showed that they had this policy they knew they were supposed to keep the video for exactly these purposes and they didn't keep it and the court determined that spoliation we're not going to enter default but we are going to enter the remedy and it used the term sanction is going to order the particular sanction that at trial an adverse inference will be applied to these facts that would that's that's true but how do we know that that wasn't done because it seems to me as has been indicated the key question in this case is whether the carts were moving Madama who seems to be in have been in charge of the carts said no they weren't and he specifically credits her testimony that doesn't necessarily mean that he wasn't aware of this negative inference that you that you previously set up I mean he heard everything he said before the trial I'm  the carts were stationary and I can't conclude from this record that all of a sudden inference from the spoliation thing just evaporated well I think by the result we have to and I don't think that's why I mean he credited Madama you can have an adverse inference from the spoliation thing but you listen to this witness he says that that witness testified credibly I find that as a fact that they were stationary seems to me to be bulletproof and I can't just assume that the at any adverse inference went away it's only an adverse inference it's not a conclusive inference in this case he didn't in other words he didn't find as a result of the spoliation I'm going to find that the carts were moving no that's true instead he took testimony and came to the conclusion the carts were stationary and if he were going to look at the evidence or the court were going to look at the evidence and say you know what I don't think the adverse inference requires that those inference be inferences be made on such facts as this whether the cart was moving whether miss Madonna's testimony is credible or not and the way to put in mr. Ogasawara's testimony are all subject to this adverse inference order now certainly the court could have at trial said I've heard the testimony I think the application of the adverse inference order would be unjust I'm revisiting that order I'm adjusting it I'm not unjust I've drawn the inferences but they're just inferences and here we've got direct testimony that says they were stationary he's decided to believe that that's what a trial is all about absolutely and this trial was took place with these certain facts did you say did you say to the judge what about the adverse inference when all of these rulings came down about Madonna and her credibility they were certainly addressed in our proposed findings and conclusions and after the conclusions so it was right there in front of them the adverse inference from the spoilers yes and so now how do again how do we know that he wasn't paying any attention when it was right in the documents that you presented to him I don't know whether he was paying attention to it or not but it wasn't applied well I don't know how you can say that because judges do an awful lot of things and they don't just you know go through the process like a kabuki dance of saying I've done this I've done that I mean if you say if you make an argument and then you lose I don't say you can therefore lawyers say this all the time they ignored my argument I just don't know how we can say that when it was right smack staring the judge in his face and I don't I'm not arguing that he wasn't aware of it I'm saying we look at the record and it wasn't applied because these were the facts that were subject to the adverse inference but adverse inference doesn't mean that you win no I understand this goes into the whole pot of stew that's made up by all the witnesses testimony at the end of that there's a well he made a finding that the thing was stationary and he credits Madama who seems to have been in charge of the whole cart thing she was the one who was handling the car that's true and she says that were stationary he said I find that credible and I don't think I don't have any problem at all in understanding how that could overwhelm any adverse inference from the failure to keep the tapes in which case the adverse inference would have need to have been set aside which is where we get the test human did you make a motion for new trial on the ground that the spoilation adverse inference wasn't applied to these facts and circumstances no we presented as an issue on appeal because it had been briefed the court our understanding was not that the court wasn't aware of it it was that the court didn't apply it and when we have a witness like miss Madama who testified about three things two of them objectively untrue and then the court accepts her testimony about where the courts are moving or not in spite of evidence by her co-worker that the courts were moving the adverse inference was was in play well if there's it wasn't apply if there's a practice pointer here it might be to make a motion for a new trial on that ground noted thank you very much thank you Richard Collin appearing on behalf of dependent Costco wholesale corporation with respect to the video Costco screwed up you're supposed to maintain the video they didn't the court entertained mr. Cruz's motion and entered the adverse inference at first I thought you said counsel screwed up the court I think judges you mentioned the court is not bound on a conclusive basis to stick to the adverse inference that it found if we go back to what the video would have shown we don't know there was evidence that the camera is focused but we don't know it was focused on the site of the incident be that as it may the court made the adverse inference and with respect to the movement non-movement the judge way the credibility of this padama and the other trial witnesses and made the finding that the carts were stationary and your argument would be notwithstanding the inference made that finding that is correct your honor and the judge clearly had in his mind at least one of the three adverse inferences at paragraph 18 he specifically refers to 18 which is on page 7 excerpt volume 1 page 7 on the date of the incident a constant flow of customers was entering the exit aisle the court infers adversely to Costco that the aisle was very crowded at the time of the incident I'll admit reading the footnote now that doesn't go to the point of the movement of the carts but clearly the judge was aware that there were adverse inferences out there and a couple that with a finding that the carts were stationary I think leads it well it leads me to the conclusion that the judge was aware of the adverse inferences and chose not to apply it what was the time interval between the discussion about adverse inferences from the spoilation and the trial itself the order granting mr. Cruz's motion in part was February 17th the trial took place days later so it's not like a year later oh no your honor that the trial in this 20s for two days and then March 4th was the third day of trial so within two to three weeks of the hearing on the adverse inference well I shouldn't say judge the order we find out when the hearing the February 19th date judge the 17th date was the date on which the court signed the order I do not have the for me on which the argument was made but clearly on the 17th he was looking at was it improper for the district court to consider the lack of past accidents in determining whether there was a risk of harm or an unreasonable judge I did not hear the first part was it proper for the court to consider the lack of past accidents I thought that was an issue that was raised with respect to that I think it was raised at one point your honor I don't think it was one of the issues that the appellant raised on appeal the was it proper for your honor it may be an indirect way in that what is the risk posed by these carts this Costco warehouse is a busiest Costco warehouse in the country they have I think it was 1.6 million people coming members doesn't count guests of year and there are two modes of transporting what three hand carrier purchases they have a regular grocery cart vehicle then they have these flat beds which are 17 feet long three-and-a-half feet high at the handle of the back the flatbed portion of it is ankle height no doubt about it and the best of all world world is painted a bright orange around the flatbed portion up the vertical parts of support the push handle which is horizontal now there was a lot of talk about the paint chipping yes the paint was chipped there's still orange I mean it's didn't blend into a gray brown concrete floor and if you stack five of these things together you're talking about a rather large set of flatbeds I would suggest you maybe the size the length of the clerk's table in front of you now the law before Stegman which came out in December of last year was open and obvious is a defense if it's open and that this size of a stack of five flatbed cars painted in part in orange was open and obvious therefore the first argument on no duty to warrant is just that it's open and obvious there is testimony at trial that on this one walked within an arm's length or two to the right of this length of flatbed carts saw her daughter diagonally to her left near the hearing center hearing aid center and turned and to walk towards her and she tripped the law in Hawaii is clear that a pedestrian must be aware of his or her surroundings she testified and I believe it's in the findings that she was walking and she well as she walked up to make her diagonal turn looking down there's the front edge of the feeding flatbed I think statement change that but it was post briefing December last year so I don't think it applies although it's interesting to note that the what's the point you're trying to make you know that was thank you yeah open and obvious no duty to warn getting back for a moment if I 30% all about you are the 30% is that we did it Costco did it very crowded part of the day that stacking the flatbeds was probably against the policy said you shouldn't stack but if you do you got to be able to handle the stack that you're you're moving the Damba testified that the five carts was more than she had normally stacked and may even have testified it was more than she'd ever stacked before and that in order to get going she had to step backward put her weight against the trailing of horizontal bar and push because these things are happy so I think that that coupled with the painting chipping issue gave rise to the imposition of of the contributory negligence on the part of Costco that itself doesn't create a duty to warn I don't believe so your honor because you have this open and obvious situation in front of you and in fact the judge Seabright found aside notify your honor this is quite herself testified that people were not blocking her travel as she moved toward the hearings center where her daughter was prior to the incident finding 42 on page 13 the court finds it more likely than not the plaintiff came into contact with the subject flatbeds because she failed to notice them rather than because of any action or inaction on the part of a Costco employee so it's Costco aside from the spoil the issue of the video Costco driven right here no shouldn't have been out there in the lunch hour should have stacked five flatbeds should it in the best of all worlds have another employee at the forefront of the stack of of carts basically clearing the way for the stack keep going to make it a good taste I talked about these it's the it's the what you're saying is we're in a pellet court you have findings of fact and credibility that are bulletproof and I I suggest to you that the majority of the issues outside of the pure legal issues on the case law that Mr. Cruz raises is just that judge Seabright saw the witnesses got a feel for him made his adopting some and rejecting some of the proposed findings of both Mr. Cruz and I submitted and he judged the credibility of these witnesses and I respectfully suggest that you're stuck with them credibility issue on the first issue of appeal Mr. Cruz raises did the trial court air and refusing to apply disprobation findings I've addressed that the court didn't air because he specifically referenced one and had the order with respect to the trial number two did the district court air when he found duty to duty to warn did not arise unless and until defendant has noticed that the plaintiff did not see the tripping hazard I believe I've addressed that the tripping hazard she walked right next to it it was open and obvious the third point is that the dangerous versus the unreasonable risk of harm I believe that's incorrect your honor conclusion of law number 10 plaintiff failed to prove by preponderance that the flatbeds presented an unreasonable risk of harm he had that in his mind and made that conclusion and the fourth one goes to the comparative negligence I suggest that the court has broad discretion and arriving based on the evidence as a whole as to the culpability of both parties finding a fact number 42 basically says the plaintiff came in contact with the flatbeds because she failed to notice them rather than any action or interaction by Costco and conclusion of law number 18 despite the increased risk created by Costco Costco preceded or prevailed presented by preponderance of the evidence the plaintiff failed to exercise the amount of care that would be expected of a person of ordinary prudence in the same circumstances mrs. Kwan failed to see and avoid this is conclusion number 21 your honors even though she could clearly see her path of travel which was a specific finding of fact and had substantial what the court said is visual clues alerting her to the subject flatbeds the size the orange walking her I believe that the findings of fact conclusion of law in the subsequent judgment were correct I asked the court to affirm them and I thank you for your time and your patience I think just trust question about what about the 30% is the bottom of the inherent contradictions in the findings and conclusions the court mentions over and again there's no unreasonable risk of harm here but in order to find that Costco is 30% of fault and had to have found that there was an unreasonable risk of harm that there was negligence it's just on the balancing of the negligence it only a portion 30% to Costco 70% to Mrs. Kwan let me go to something else counsel read to us from the record something that suggested the so it seems to me that from that I can assume that my surmise is correct that the court was aware of it imposed it where it was important and found that the place was crowded but then that was overtaken by the testimony of the witnesses the court said the court was aware of it and it applied it to an uncontroverted fact all the facts were that the hall was crowded so there's no inference there that's an uncontroverted fact where the facts were controverted and there was actually a question of material question to be decided it went with Costco on every single one of those in spite of the adverse inference but the overall analysis and this goes to the duty of to warn which was totally discarded did you argue the adverse inference to the court before it made its findings of fact and conclusions of law yes I'm not arguing that the court wasn't aware of it I my argument is that it wasn't applied where it should have been applied but setting that aside the duty to warn was discarded which is an entire claim on its own if we have the court apportioning 30% negligence to Costco it is found there's an unreasonable risk of harm which would give rise to the duty to warn that's the case law cited by not just the duty to warn but the overall analysis of unreasonable risk of harm which the court has found and then it appears to have tempered by making determinations that had nothing to do with the facts of the case like in other circumstances on other days there haven't been any other instances or they don't have a bet or there were some instances but they don't have a bad history of people tripping over these things but those are in factual context that have nothing to do with the facts of this case which was at a particular time of day in a particularly busy hour with particular cards with the paint chipping off what was the extent of the damages that your client suffering she broke her arm had to have surgery to that and busted out some teeth thank you very much thank you for your arguments here today take these matters under this case under advisement thank you very much you are excused
judges: Goodwin, Trott, Murguia